IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RACHEL CORINA LUNA | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:22cv-01151 |
| | § | |
| NATIONS DIRECT MORTGAGE, LLC | § | |
| *Defendant* | § | |

## DEFENDANT, NATIONS DIRECT MORTGAGE, LLC'S
## MOTION FOR SUMMARY JUDGMENT

Defendant, Nations Direct Mortgage, LLC ("Nations Direct") asks the Court to enter summary judgment, or in the alternate, judgment on the pleadings as to Plaintiff's claims and Nations Direct's counterclaims, and would respectfully show:

### I.   SUMMARY OF MOTION

1.      Plaintiff acknowledges making a mortgage loan with Nations Direct then defaulting by failing to make payments.[1] When Nations Direct attempted to foreclose the Deed of Trust lien, Plaintiff sued Nations Direct for fraud and violations of the Real Estate Settlement Procedures Act ("RESPA"). Plaintiff's fraud claim fails because she did not rely on any representation made by Nations Direct. Nations Direct expressly communicated that Plaintiff did not (and does not) qualify for a loan modification. Plaintiff's RESPA claim fails because modifying a loan is not a "standard servicer's duty." For these reasons, Nations Direct asks the Court to enter summary judgment in its favor on all claims.

### II.   SUMMARY JUDGMENT EVIDENCE

2.      Nations Direct attaches the following summary judgment evidence in support of this Motion:

---

[1] *See* Plaintiff's Original Petition (the "Complaint"), p. 3, ¶¶ 10-11.

| Exhibit A: | Affidavit; |
| Exhibit B: | Note; |
| Exhibit C: | Deed of Trust; |
| Exhibit D: | Servicing Notes; |
| Exhibit E: | Loss Mitigation Notes; |
| Exhibit F: | Feb. 12, 2019, loss mitigation denial letter; |
| Exhibit G: | Feb. 19, 2019, Notice of Default letter; |
| Exhibit H: | April 2, 2019, Notice of Acceleration; |
| Exhibit I: | June 11, 2019, Correction Deed; |
| Exhibit J: | June 25, 2019, Correction Affidavit; |
| Exhibit K: | July 1, 2019, loss mitigation denial letter; |
| Exhibit L: | September 16, 2019, letter advising loss mitigation application complete; |
| Exhibit M: | IRS Lien; |
| Exhibit N: | Jan. 14, 2020, letter re proof of lien release; |
| Exhibit O: | October 18, 2021, letter asking for contact for loss mitigation; |
| Exhibit P: | Feb. 8, 2022, Notice of Acceleration and Sale; |
| Exhibit Q: | Aug. 20, 2019, Assignment of Deed of Trust; and |
| Exhibit R: | Affidavit of Damian W. Abreo. |

## III.   **STATEMENT OF FACTS**

3.      Plaintiff executed a Note in the amount of $327,750.00 with an interest rate of 5.125% payable to Nations Direct.  Exhibit B.  The first payment was to begin on March 1, 2017. The Note was to mature on February 1, 2047.

4.      Plaintiff executed a Deed of Trust to secure the indebtedness against real property located at 16022 Kube Court, Jersey Village, Texas 77040 (the "Property").  Exhibit C.  (The Note and the Deed of Trust will be collectively referred to as the "Loan").  The Deed of Trust identifies Nations Direct as the Lender and Mortgage Electronic Registration Systems, Inc. ("MERS") as the

beneficiary, but only in its capacity as Nation Direct's nominee.

5.     Nations Direct remains the holder of the Note and is entitled to enforce the Note and Deed of Trust.  Exhibit A.

6.     Plaintiff tendered payments on the following dates:  March 6, 2017, April 27, 2017, May 16, 2017, June 16, 2017, and July 30, 2017.  Exhibit D, p. 11.

**A.     The First Loss Mitigation Attempt.**

7.     On August 27 and 28, 2017, Hurricane Harvey struck the Texas coastline causing unprecedented flooding and inflicting terrible damage in the Houston area.

8.     Plaintiff tendered a payment on August 29, 2017.  That payment was returned due to insufficient funds on August 31, 2017.  On August 31, 2017, Plaintiff resubmitted the payment and it cleared.  Exhibit D, p. 11.

9.     On September 13, 2017, Nations Direct began a loss mitigation review for the purpose of entering into a disaster forbearance agreement with Plaintiff.  Exhibit E, p. 22.  At Plaintiff's request, Nations Direct placed the loan on a disaster forbearance.  *Id.*  The forbearance remained in place until May, 2018, when Nations Direct reviewed the loan for a modification.  Exhibit E, p. 20.  Nations Direct approved the loan for a disaster related "Flex" modification offer and advised Plaintiff of the approval on June 18, 2018.  *Id.*

10.     Under the modification offer, Plaintiff was to make three trial payments of $2,860.75, with payments beginning on June 1, 2018.  *Id.*  Plaintiff made the trial payments on June 18, 2018, August 1, 2018, and August 30, 2018.  *Id.*  Nations Direct approved the loan for final modification after receipt of the third payment and began preparing the final written modification agreement.

11.     On October 9, 2018, the Plaintiff was advised that Nations Direct was preparing

the modification agreement for her signature and that payments would begin on October 1, 2018. Exhibit E, p. 19. Payments were to be in the amount of $2,714.55. *Id.* Plaintiff made the October, 2018, payment by phone on October 31, 2018. *Id.*

12.     On November 27, 2018, Plaintiff attempted to make the November payment by ACH transfer. The ACH payment was returned due to insufficient funds in Plaintiff's account. Exhibit D, p. 10.

13.     As part of the modification process, Nations Direct conducted a title search to assure that modifying the loan would not render it subordinate to any liens that affixed to the property after Plaintiff signed the Deed of Trust. Nations Direct located three judgment liens, including one for child support. *Id.* (entry on Dec. 26, 2018). Nations Direct also discovered that the Warranty Deed and Deed of Trust contained an incorrect legal description of the Property. *Id.*

14.     On January 7, 2019, Plaintiff was advised that she would have to provide releases for the three judgment liens in order for the modification to be completed. Exhibit E, p. 18. When no releases were received, Nations Direct denied the loan modification and closed the loss mitigation review. *Id.* (entry on Feb. 12, 2019) The loss mitigation review was closed and a rejection letter mailed to Plaintiff on February 12, 2019. Exhibit F.

**B.     Notice of Default and Acceleration.**

15.     On February 19, 2019, Nations Direct served notice of the default on Plaintiff via first class mail, and certified mail, return receipt requested. Exhibit G.

16.     On April 2, 2019, Nations Direct notified Plaintiff of the acceleration of the Loan. Exhibit H.

**C.     The Second Loss Mitigation Attempt.**

17.     On March 5, 2019, Plaintiff contacted Nations Direct and advised that the judgment

liens were the result of judgments taken against someone else. Exhibit D, p. 10. She advised that her and her mother share the same last name and that the judgments were likely against her mother. *Id.* She was again advised by Nations Direct that she would have to submit proof that the judgments were not against her personally, that the judgments had been released, or that payment plans were in place whereby the judgments would be satisfied. *Id.*

18.     Plaintiff submitted a second loss mitigation application on March 6, 2019. Exhibit D, p. 9. On March 8, 2019, Nations Direct re-started its review. Exhibit E, p. 18. On the same day, Plaintiff called Nations Direct and was advised that the application was in review. Exhibit D, p. 9.

19.     On March 11, 2019, Plaintiff provided documents that putatively addressed the three judgment liens, including a copy of a letter stating that her wages were no longer being garnished (presumably for child support). Exhibit D, p. 8.

20.     On March 15, 2019, Nations Direct approved a trial modification offer to be extended to Plaintiff. Exhibit D, p. 7. Trial payments were to be made from April 1, 2019, through June 1, 2019, in the amount of $3,056.96. *Id.* Plaintiff was advised on March 15, 2019, that a hardship letter and proof of hardship were needed. Exhibit E, p. 17. Plaintiff made the February and March, 2019, payments on April 22, 2019 and April 23, 2019. Exhibit E, p. 15.

21.     On April 30, 2019, Nations Direct began preparing the final written modification agreement. Exhibit E, p. 15. Upon review, Nations Direct determined that the title issues had not been resolved. Exhibit E, p. 15. Plaintiff was informed of the title issues on May 7, 2019, and emailed an affidavit and a copy of a garnishment judgment to Nations Direct. Exhibit E, p. 14. The documents were reviewed the same day and it was determined that the affidavit did not address the child support lien and the judgment for garnishment of wages that had not been released. *Id.*

22.     Nations Direct made a title claim to address the incorrect legal description on the Warranty Deed and Deed of Trust and on May 29, 2019, received communications from WFG National Title Insurance Co. Exhibit E, p. 12. This resulted in Patriot Title recording correction instruments on June 11, 2019, and June 25, 2019, that resolved this aspect of the title issues. Exhibit I and J.

23.     On June 20, 2019, Nations Direct emailed Plaintiff to inquire about releases for the three judgments. Exhibit E, p. 11. On July 1, 2019, the loan was again removed from loss mitigation review due to the unresolved title issues. *Id.* A denial letter was sent to the borrower as well as an email inquiring as to the status of the lien releases. Exhibit K.

24.     On July 2, 2019, Plaintiff called Nations Direct and was advised of the denial of her second loss mitigation request. Exhibit D, p. 6. She was advised that she needed to either secure lien releases or to complete documents sufficient to prove that the judgments were not against her. *Id.* On July 3, 2019, Plaintiff provided signed lien releases to Nations Direct. Exhibit D, pp. 5 and 6.

**C.     The Third Loss Mitigation Attempt.**

25.     The first two attempts at loss mitigation were attempts to process a "no document" loan modification. Upon receipt of documents resolving the title issues, Nations Direct once again opened a loss mitigation file in an attempt to process a no document flex modification.

26.     On July 8, 2019, Nations Direct again began a review of Plaintiff's loan for assistance. Exhibit E, p. 11. On August 13, 2019, Nations Direct received a third loss mitigation application from Plaintiff. Exhibit D, p. 5. Nations Direct conducted an initial review of the application on August 15, 2019, and determined that it was missing (1) a household expense form, (2) Plaintiff's two most recent tax returns, (3) Plaintiff's two most recent paycheck stubs, (4) and

a hardship letter explaining the nature of the hardship, when it began and when it ended. Exhibit
E, p. 10. A Nations Direct representative advised Plaintiff of the need for these documents on
July 15, 2019, by telephone. *Id.*

27.    Nations Direct received the missing documents on August 30, 2019, and began the
review for loss mitigation assistance. Exhibit E, p. 9. On September 4, 2019, Nations Direct
deemed the application complete and sent a letter to Plaintiff advising her that her application was
complete. Exhibit E, p. 8. Plaintiff called Nations Direct on September 9, 2019, and was advised
that her application was deemed complete and was under review. Exhibit E, p. 8.

28.    On September 16, 2019, Nations Direct approved a full document flex trial
modification. Exhibit E, p. 8. Payments were to be $3,062.37 per month beginning November 1,
2019, and continuing for three months. *Id.* Plaintiff was advised of the trial payments by phone
and verbally accepted the offer. *Id.*

29.    Plaintiff made the first trial payment on September 19, 2019. Exhibit E, p. 8. On
October 7, 2019, Plaintiff tendered the second trial payment. Exhibit E, p. 7. On October 8, 2019,
that payment was returned for insufficient funds. *Id.* Plaintiff tendered the second trial payment
on November 18, 2019, and the third payment on December 27, 2019. Exhibit E, pp. 6 and 7. On
November 20, 2019, Nations Direct conducted a review to determine whether a final modification
could be approved. Nations Direct discovered an IRS lien. Exhibit E, p. 7, Exhibit M.

30.    On January 14, 2020, a Nations Direct representative attempted to contact Plaintiff
by phone but was unable to reach her or to leave a message. Exhibit E, p. 6. The representative
sent an email to Plaintiff's email address advising Plaintiff that Nations Direct needed assurances
that the IRS tax lien and the child support lien have been satisfied. *Id.*

31.    On January 14, 2020, Nations Direct sent a letter to Plaintiff requesting proof that

the liens were released or satisfied.  Exhibit N.  Nations Direct gave Plaintiff thirty days to respond.

Plaintiff provided documents that demonstrated the child support lien was no longer active.  On

February 11, 2020, Nations Direct acknowledged that the sole remaining issue was the federal tax

lien.  Exhibit E, p. 5.  On April 22, 2020, the loss mitigation file was once again closed by Nations

Direct as the federal tax lien remained unresolved.  Exhibit E, p. 4.

**D.      The Fourth Loss Mitigation Attempt.**

32.      On October 9, 2021, Nations Direct once again reopened the loss mitigation file.

Exhibit E, p. 3.  On October 18, 2021, Nations Direct mailed a letter to the Plaintiff asking that

Plaintiff contact Nations Direct to continue loss mitigation efforts and advising that Plaintiff was

approved for a trial period modification plan.  Exhibit O.

33.      On October 19, 2021, the loan was approved for a no document flex modification

trial offer.  Exhibit E, p. 3.  Like the prior trial offers, this attempt would consist of three trial

payments in the amount of $2,753.89 beginning on December 1, 2021 and continuing to February

1, 2022.  *Id.*  On November 3, 2021, a Nations Direct representative attempted to reach Plaintiff

by phone to discuss the latest loss mitigation attempt.  Exhibit D, p. 2.  On November 23, 2021, a

Nations Direct representative called Plaintiff and left a voicemail asking that Plaintiff contact

Nations Direct.  *Id.*  A second call was placed later that day to Plaintiff's work number and the

Nations Direct representative making the call found that the phone number was disconnected.

Exhibit E, p. 1.

34.      On February 8, 2022, Nations Direct, acting through foreclosure counsel, served

Notice of Acceleration letters and Notice of Sale on Plaintiff via regular and certified mail,

advising that a foreclosure sale was scheduled for April 5, 2022.  Exhibit P.

35.      On February 14, 2022, Nations Direct was advised by Experian that Plaintiff had

initiated a challenge to Nations Diriect's trade line on her Experian credit report, claiming identity theft. Exhibit D, p. 2. Nations Direct reviewed the reporting and assured that all information was up to date. Exhibit D, p. 1.

36.    On February 16, 2022, Nations Direct was advised by Equifax that Plaintiff had initiated a challenge to Nations Direct's trade line on her Equifax credit report, claiming identity theft. Exhibit D, p. 1. Nations Direct reviewed the reporting and assured that all information was up to date. *Id.*

37.    On April 1, 2022, Nations Direct determined it would not engage in further loss mitigation efforts. Exhibit E, p. 23. The loss mitigation file was closed and the foreclosure action was recommenced.

38.    On April 4, 2022, Plaintiff filed Plaintiff's Original Verified Petition and secured a Temporary Restraining Order preventing Nations Direct from conducting the April 5, 2022, foreclosure sale.  In her Complaint, Plaintiff alleges two causes of action: common law fraud and a violation of RESPA.

39.    On April 11, 2022, Nations Direct filed its answer and counterclaim. Nations Direct seeks a judgment fixing and establishing the amount due under the Loan.  Defendant also seeks an order allowing it to exercise the power of sale under the Deed of Trust and TEX. PROP. CODE §51.002.  In the alternative, Nations Direct seeks judicial foreclosure and an order instructing the constable or sheriff to sell the Property to the highest bidder for cash in accordance with applicable Texas law.

## IV.    **STANDARD OF REVIEW**

40.    Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment if it can establish that there is no genuine issue of material fact and that it is entitled to

judgment as a matter of law. *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). The movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990).

41.     Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). This burden is not satisfied with some metaphysical doubt as to material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *Id.* Instead, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Ind. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must show that the evidence is sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000).

## V.     ARGUMENTS AND AUTHORITIES

42.     In her Complaint, Plaintiff urges two causes of action, fraud and violation of the Real Estate Settlement Procedures Act ("RESPA") and Regulation X. Plaintiff's fraud claim is premised on the allegation that Nations Direct repeatedly told Plaintiff that her application was complete, then requested more documentation or advised that the application had expired. It is also premised on the allegation that Nations Direct represented in May, 2020, that Plaintiff was approved for a loan modification then refused to sign the modification agreement. Plaintiff's RESPA claim is premised on the allegation that Nations Direct failed to process Plaintiff's loss mitigation applications timely and properly. Both claims fail as a matter of law. In the alternate, Plaintiff will be unable to produce evidence to support elements of each claim.

## A. Plaintiff's fraud claim fails.

43.     Plaintiff contends that Nations Direct committed fraud by (1) telling Plaintiff her loss mitigation application was complete then requesting more documentation and then telling her that the application was expired and instructing her to submit a new loss mitigation application.[2] Plaintiff also contends that Nations Direct committed fraud by telling her she was approved for a loan modification based on a May, 2020, application, then never signing and completing a modification.[3] Plaintiff alleges that "those corespondences were… with no intentions of executing any sort of loss mitigation."[4]

44.     Plaintiff's fraud claim fails for at least two reasons.  First, requesting additional documents to resolve title issues after telling a borrower that a loss mitigation application is complete is simply not fraud.  In fact, this very action is contemplated by the express terms of Regulation X.  Second, Plaintiff cannot show that any representation by Nations Direct was made with the knowledge that the representation was false at the time that it was made.  Plaintiff has failed to allege facts that support a fraud claim and will have no evidence to create a genuine issue of material fact as to whether there was a false misrepresentation or whether Nations Direct had knowledge of the falsity.

45.     In Texas, a fraud claim consists of (1) a misrepresentation of material fact, (2) that was false, (3) made at a time when the speaker knew it was false or made the representation recklessly without knowledge of the truth and as a positive assertion, (4) made with the intent that the plaintiff act on the representation, (5) actual and reasonable reliance on the representation by the plaintiff, and (6) damages suffered by plaintiff as a result of the reliance. *Exxon Corp. v.*

---

[2] Complaint, p. 4, ¶ 16.
[3] *Id.*
[4] *Id.*

*Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011); *Gajardo v JPMorgan Chase Bank, N.A.*, 605 Fed. Appx. 240, 246 (5th Cir. 2015).

### 1. Requesting additional documentation is not fraud; there were no misrepresentations of material fact.

46.    Plaintiff contends that Nations Direct committed fraud when Nations Direct represented that her loss mitigation application was complete and then requested additional documents. A "complete loss mitigation application" is "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 CFR §1024.41(b)(1). There were multiple times that Plaintiff's loss mitigation application was complete and Nations Direct conducted a review of the application. This is evident from Nations Direct's loss mitigation process notes. <u>Exhibit E.</u> In each instance, Nations Direct's review of the loan for permanent modification lead to the discovery of title issues that could potentially cause Nations Direct's lien to become subordinate to otherwise inferior liens. Naturally, Nations Direct asked for additional documentation showing that the inferior liens were released or otherwise satisfied.

47.    Regulation X contemplates this very situation:

> (iv) Facially complete application. A loss mitigation application shall be considered facially complete when a borrower submits all the missing documents and information as stated in the notice required under paragraph (b)(2)(i)(B) of this section, when no additional information is requested in such notice, or once the servicer is required to provide the borrower a written notice pursuant to paragraph (c)(3)(i) of this section. **If the servicer later discovers that additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents** and treat the application as complete for the purposes of paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application.

12 C.F.R. §1024.41(c)(2)(iv) (emphasis added). The very act of which Plaintiff complains is <u>required</u> by Regulation X. Defendant has found no authority for the proposition that once a

servicer accepts a loss mitigation application and acknowledges that it is complete the servicer cannot request additional documents and must modify the loan.

48.     The summary judgment evidence demonstrates that each time Nations Direct requested additional information the request was made as a result of an incomplete application or following the discovery of an additional impediment.   For instance, after approving Plaintiff for a no document flex modification on August 20, 2018, Nations Direct discovered three abstracts of judgment and that the Deed and Deed of Trust contained incorrect legal descriptions.   Exhibit E, p. 19, Dec. 26, 2018 entry.  Nations Direct asked Plaintiff to provide evidence that the liens were released or otherwise satisfied.  When Plaintiff submitted a second loss mitigation application in March, 2019, Nations Direct asked Plaintiff to provide a signed and dated hardship letter.  Exhibit E, p. 17, March 15, 2019, entry.  When Nations Direct approved the loan for modification a second time, it again asked that Plaintiff provide lien releases for the three abstracts of judgment.  Exhibit E, p. 14.  Plaintiff submitted another loss mitigation application in August, 2019.  Exhibit E, p. 10. The August, 2019, application was missing a number of items and Nations Direct asked Plaintiff to provide them so that the application could be reviewed.  *Id.*  None of the requests were unusual. None of the requests were misrepresentations of material fact.

49.     Nations Direct represented that Plaintiff's application was complete on several occasions.  The summary judgment evidence demonstrates that at the time of each representation, the representations were true.   For instance, a Nations Direct representative spoke to the Plaintiff on May 6, 2019.  Exhibit E, p. 15.  At the time of that conversation, the loss mitigation application was complete, the trial period payments had been made, and Nations Direct's attorney had been asked to prepare an agreement to permanently modify the loan.  Though the loss mitigation notes do not expressly state that Plaintiff was advised the her loss mitigation application was complete,

it is likely that this representation was made to her at this time.  The notes do expressly state that a letter was sent to Plaintiff on September 4, 2019, stating that her application was complete. Exhibit E, p. 8.  On September 16, 2019, Plaintiff was even advised that she had been approved for a full document flex modification and that trail payments would begin on November 1, 2019. Exhibit E, p. 8.   Unfortunately, the Internal Revenue Service filed a Notice of Federal Tax Lien on October 23, 2018, after the title review on the first loss mitigation attempt.  Exhibit M.  The tax lien was discovered when a title commitment was ordered and reviewed prior to finalizing the loan modification.  Exhibit E, p. 7, Dec. 2, and 5, 2019, entries.  With the discovery of the tax lien, where once there was a completed loss mitigation application and approval to modify the Loan, there was now an unacceptable risk that could not be insured against.  There simply was no misrepresentation of material fact at any point during the multiple attempts at loss mitigation.

50.    At no point did Nations Direct make any affirmative representations regarding the modification of Plaintiff's loan or the loss mitigation process.  Even if representations regarding missing documents and the permanent modification of the loan were false, Plaintiff cannot prove that the representations were knowingly false or made recklessly.  The summary judgment evidence conclusively demonstrates a deliberate process that was thwarted by other encumbrances on the Property caused by Plaintiff's other debts.

**2.    Plaintiff's pleadings will not support a fraud claim.**

51.    Plaintiff alleges Nations Direct committed fraud by engaging in loss mitigation discussions with no intention of providing loss mitigation.  Under Texas law, a promise of future performance constitutes actionable fraud only if "the promise was made with no intention of performing at the time it was made."  *Formosa Plastics Corp. U.S. v. Presidio Engrs & Contrs.*, 960 S.W.2d 41, 48 (Tex. 1998).

52.     Fed. R. Civ. P. 9(b) imposes a heightened level of pleading for fraud claims and requires a party alleging common law fraud to plead the surrounding circumstances with particularity. Fed. R. Civ. P. 9(b); *Tuchman v. SSC Comm'n Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).     Plaintiff must allege "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Tuchman* 14 F.3d at 1068.  While particularity is relaxed when pleading scienter, pleading scienter requires more than simple allegations and a plaintiff must provide specific facts to support an inference of fraud. *Am. Realty Trust, Inc. v. Hamilton Lane Advisors*, 115 Fes. Appx. 662, 667 (5th Cir. 2004).

53.     In this case, Plaintiff asserts "However, those correspondences were at worst, with no intentions of executing any sort of loss mitigation, and at least, wasting Plaintiff's time for over a year and keeping Plaintiff in anxiety about whether her home was going into foreclosure despite all her efforts."[5]  The Complaint falls short of identifying "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the representation and what that person obtained thereby." *Tuchman* 14 F.3d at 1068.    In a case with similar facts, Judge Stacey found that a plaintiff failed to adequately plead fraud where the plaintiff alleged that "Ja Tara" represented that the plaintiff "qualified for a 2% modification" and the mortgagee then offered a higher rate.  *See Drake v. Bank of America Corp.*, 2016 U.S. Dist. LEXIS 202403, at *15-16 (S.D. Tex. Mar. 9, 2016) (adopted by 2016 U.S. Dist. LEXIS 202402 (S.D. Tex. Apr. 6, 2016)).  In *Drake* the plaintiff was able to identify the party making the representation but failed to state when, where, and how the representation was made, how the representation was false, that the person making the statement knew it was false when she made it, or that the speaker had any

---

[5] Complaint, p. 5, § 16.

intent to deceive plaintiff. *Drake*, 2016 U.S. Dist. LEXIS 202403, at *16. On these facts, the court dismissed the claim under Rules 9(b) and 12(b)(6). *See also Guajardo v. JPMorgan Chase Bank, N.A.*, 605 Fed. Appx. 240, 246 (5th Cir. 2015) (upholding dismissal where plaintiff alleged mortgagee promised to conduct loss mitigation review but did not allege that mortgagee did not intend to perform the promise at the time it was made "much less facts necessary to generally support such an allegation"). Plaintiff has not affirmatively asserted the Nations Direct had no intention of modifying her loan and has not asserted facts that would support such an allegation. Summary judgment in favor of Nations Direct, or in the alternate, dismissal of Plaintiff's fraud claim with prejudice is warranted.

### B. Plaintiff's RESPA claim fails.

54.      Plaintiff's second claims is based on the allegation that Nations Direct violated 12 U.S.C. §2605(k)(1)(c), which states:  "A servicer of a federally related mortgage shall not... (C) fail to take timely action to respond to a borrower's request to correct errors relating to the allocation of payments, final balances for the purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. §2605(k)(1)(C).

55.      Plaintiff has not alleged that Nations Direct failed "to take timely action to respond to a borrower's request to correct errors relating to the allocation of payments, final balances for the purposes of paying off the loan, or avoiding foreclosure." Plaintiff does not allege that errors exist relating to payment allocations or that the payoff balance was incorrect. Rather, Plaintiff alleges that Nations Direct violated Section 2605(k)(1)(C) by failing to process Plaintiff's loss mitigation applications timely and by "incorrectly leading Plaintiff to believe the application was processed without an issue, or state later that the application was missing documents, and then put

Plaintiff in a position that her application would expire before she could reasonably respond."[6]

Plaintiff must believe that these alleged acts or omissions by Nations Direct must be "other

standard servicer's duties." 12 U.S.C. §2605(k)(1)(C).

56.     Defendant has not identified any authority from within the Fifth Circuit that would

help define the scope of "other standard servicer's duties." Clearly, loss mitigation efforts are not

identified in Regulation X's definition of "servicing." *See* 12 C.F.R. §1024.2(b).   The Fourth

Circuit Court of Appeals has expressly addressed the issue in *Morgan v. Caliber Home Loans, Inc.*

The Fourth Circuit's opinion stated:

> Although we have not directly addressed the issue of whether a modification,
> or potential modification, of a contract constitutes servicing protected by
> RESPA, we have previously found the Ninth Circuit's treatment of the issue
> in *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661 (9th Cir. 2012), to be
> instructive. *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 413 (4th
> Cir. 2015). In *Medrano*, the Ninth Circuit concluded RESPA "distinguishes
> between letters that relate to borrowers' disputes regarding servicing, on the one
> hand, and those regarding the borrower's contractual relationship with the
> lender, on the other." Consequently, the Ninth Circuit held that "challenges to
> the terms of the loan and mortgage documents" are not disputes regarding
> servicing under RESPA. Similarly, in *Poindexter v. Mercedes-Benz Credit
> Corp.*, we emphasized that "servicing" is limited to "the receiving or making of
> loan payments" and is not related to "the terms of the loan and mortgage
> documents." Thus, correspondence limited to the dispute of contractual issues
> that do not relate to the servicing of the loan, such as loan modification
> applications, do not qualify as QWRs.
>
> A loan modification is a contractual issue, not a servicing matter. The Johnson
> Letter does not relate to any dispute of Johnson's payments, or assert an error
> related to the servicing of the loan. *See* 12 U.S.C. § 2605(k)(1)(C) (stating that
> a servicer must "respond to a borrower's requests to correct errors relating to
> allocation of payments, final balances for purposes of paying off the loan, or
> avoiding foreclosure, or other standard servicer's duties"). Rather, the Johnson
> Letter merely challenges the denial of a modification of the terms of Johnson's
> loan. The only error alleged in the Johnson Letter is denial of the loan
> modification based on title issues regarding the solar panel company lien. This
> does not fall within the ambit of "servicing" so as to trigger RESPA's
> protections against providing adverse information to credit reporting agencies.

---

[6] Complaint, p. 6, § 21..

*Morgan v. Caliber Home Loans, Inc.*, 26 F.4th 643, 650-51 (4th Cir. 2022) (internal citations omitted).  Other District Courts have reached the same conclusion.  *See: Watson v. Bank of Am., N.A.*, 2016 U.S. Dist. LEXIS 85580, at *15 (S.D. Cal. June 30, 2016) ("requests relating to loan modification are not related to "servicing" of the loan."); *Smallwood v. Bank of Am., N.A.*, 2015 U.S. Dist. LEXIS 160926, at *6 (S.D. Ohio, Dec. 1, 2015) (request for a loan modification did not relate to servicing of a loan); *Mbakpuo v. Wells Fargo Bank, N.A.*,  2015 U.S. Dist. LEXIS 94414, at *8 (D. Md. July 21, 2015) (same); *Mayer v. EMC Mortg. Corp.*, 2014 U.S. Dist. LEXIS 55521, at *5-6 (N.D. Ind. April 22, 2014) (same); *Van Egmond v. Wells Fargo Home Mortg.*, 2012 U.S. Dist. LEXIS 420611, at *4 (C.D. Cal. Mar. 21, 2012) (RESPA only obligates loan servicers to respond to borrowers' requests for information relating to servicing of their loans, which does not include loan modification information).

57.    Plaintiff's Complaint contains no allegations concerning the servicing of the Loan.  Rather, her complaints are limited to the circumstances surrounding her efforts to secure mortgage assistance in the form of a loan modification.   Like the Plaintiff in *Morgan*, Plaintiff has failed to allege facts that bring her complaints within the purview of RESPA.  Summary judgment in favor of Nations Direct is warranted as to Plaintiff's RESPA claim.

**C. Nations Direct is entitled to a judgment authorizing foreclosure.**

59.    Nations Direct asks the Court to declare that it is entitled to exercise the power of sale contained in the Deed of Trust, or, in that alternate order judicial foreclosure of the and vendor's lien and/or Deed of Trust lien.

**1.    Nations Direct is Entitled to Foreclose Non-judicially.**

60.    The enforcement of a deed of trust by exercising the power of sale is governed solely by Chapter 51 of the Texas Property Code and the terms of the mortgage contract.  *See* TEX.

PROP. CODE, §51.002 ("Sale of Property Under Contract Lien"); *Slaughter v. Qualls,* 162 S.W. 2d 671, at 675 (Tex. 1942); *Holy Cross Ch. Of God in Christ v. Wolf,* 44 S.W. 3d. 562, 569 (Tex. 2001). The Texas Property Code grants the right to foreclose to a "mortgagee," either directly or through a "mortgage servicer."[7]  Additionally, neither the Texas Business and Commerce Code nor the Texas Property Code restrict the right of enforcement to a "holder."[8]  *See e.g., Nelson v. Regions Mortgage, Inc.,* 170 S.W.3d 858, 864 (Tex. App. – Dallas 2006, no pet.) (owner or holder may enforce promissory note). In accordance with Tex. Prop. Code §51.00025, a "mortgage servicer" may conduct the foreclosure proceedings. Tex. Prop. Code § 51.0001(3) defines "Mortgage Servicer" as follows:

> *The last person to whom a mortgagor has been instructed by the current mortgagee to send payment for the debt secured by a security instrument. A mortgagee may be the mortgage servicer.*

Texas Prop. Code § 51.0001(4) defines "Mortgagee" as follows:

(A)   *the grantee, beneficiary, owner, or holder of a security instrument;*

(B)   *a book entry system; or*

(C)   *if the security instrument has been assigned of record, the last person to whom the security instrument has been assigned of record.*

---

7 *See* TEX. PROP. CODE §51.0001(3) ("A mortgagee may be the mortgage servicer."; 51.002(b)(3), (d), and (e). (establishing requirements for "mortgage servicer"); and TEX. PROP. CODE §21.0025 ("A mortgage servicer may administer the foreclosure of property under Section 51.002 on behalf of a mortgagee."). Prior to 2004, Section 51.002 allowed only the "holder" of the debt to enforce a deed of trust through a non-judicial foreclosure sale. *See* TEX. PROP. CODE §51.002(b)(3), (d), and (e) (Vernon's 1993). Amendments to Chapter 51 were made in 2003, effective January 1, 2004, that demonstrated the legislatures' recognition of the distinction between a mortgagee's rights arising under the note and those arising under the deed of trust. These amendments added Sections 51.0001, 51.0021, 51.0025, 51.0075, and 51.009 to the Texas Property Code and changed Section 51.002. *See* Act of June 1, 2003, 78th Leg. Ch. 554 (effective January 1, 2004). Following the 2004 amendments, the term "holder" in Section 51.002(b)(3), (d), and (e) was replaced with the term "mortgage servicer." This change removed any requirement that an entity be the "holder" of the indebtedness in order for that entity to conduct a non-judicial foreclosure.

8 *see also* TEX. PROP. CODE §51.0001(4)(a), (b) and (c) (defining "mortgagee" to include "grantee, beneficiary, owner *or* holder of a security instrument, a book entry system, or, if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record.")

Under the statutory definition of "Mortgagee", MERS is a Mortgagee of Plaintiff's loan because MERS is the beneficiary of the Deed of Trust.  *See* Exhibit C.   Nations Direct is a Mortgagee of Plaintiff's loan because Nations Direct is the owner and holder of the Deed of Trust and is named in the Deed of Trust as the lender.  Exhibit C.   Per the above definitions (and the terms of the Deed of Trust) Nations Direct is entitled to exercise the power of sale in the Deed of Trust and conduct a foreclosure sale.

61.     Nations Direct could have foreclosed the Deed of Trust under the definition of "mortgagee" contained in the Property Code.  Plaintiff has not, and cannot, claim that Nations Direct is not a mortgagee.

62.     The Note has not been indorsed and is payable to Nations Direct.  *See* Exhibit B. Thus, under Texas Uniform Commercial Code, Nations Direct is the "holder" of the Note that is the subject of this suit.  Plaintiff judicially admits in her Original Petition that she "received a mortgage loan from Nations Direct Mortgage, LLC."[9]  Nations Direct is therefore beneficiary and owner of the Deed of Trust (and the security interest it creates).  Nations Direct is the "mortgagee" under any of the Property Code's definitions and therefore has standing to exercise the power of sale in the Deed of Trust.  Because Nations Direct is the "mortgagee," the Court must grant summary judgment in favor of Nations Direct on its request for a declaration that it has the authority to foreclose non-judicially.

63.     The Deed of Trust provides that the "Lender" may invoke the power of sale:

---

[9] Complaint, p. 3, § 10.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on

**LOAN #: 8010056690**

or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Exhibit C, pp. 8 and 9, §22. The Deed of Trust also states "Lender is Nations Direct Mortgage, LLC." Exhibit C, p. 1. A default exists as Plaintiff has failed to tender payments. Exhibit A. The loan is contractually due for the May 1, 2018, payment and all subsequent payments. *Id.* Accordingly, Nations Direct is entitled to foreclose under the terms of the Deed of Trust and summary judgment declaring that Nations Direct is entitled to do so is warranted.

**B.     Nations Direct is Entitled to Judicial Foreclosure.**

64.     In order to enforce the Note and Deed of Trust judicially, Nations Direct must prove: (a) the Note exists, (b) Nations Direct is the legal owner or holder of the Note, (c) Plaintiff is the maker or obligor of the Note and that Plaintiff executed the Deed of Trust, and (d) a balance is due and owing under the Note. *See Scott v. Commercial Services of Perry, Inc.*, 121 S.W.3d 26 (Tex.App.—Tyler 2003, pet. denied); *Sorrells v. Gilberson*, 780 S.W.2d 936, 938 (Tex.App.—Austin 1989, writ denied); *Cockrell v. Republic Mortgage Insurance Co.*, 817 S.W.2d 106, 111 (Tex.App.—Dallas 1991, no writ).

### 1. The Note Exists and Was Executed by Rachel Luna.

65.     The Note exists. *See* Exhibit B. Plaintiff's signature appears on the face of the Note. Exhibit B, p. 3. Plaintiff acknowledges that on January 13, 2017, she "received a mortgage loan from Nations Direct Mortgage, LLC."[10]

### 2. Nations Direct is the Owner of the Note and Deed of Trust

66.     Plaintiff executed the Deed of Trust. Exhibit C, p. 10. MERS was the beneficiary of the Deed of Trust. Exhibit C, p. 2, § (E). On August 20, 2019, MERS assigned its rights under the Deed of Trust to Nations Direct. Exhibit Q.

67.     The Note was made payable to Nations Direct. Exhibit B, p. 1, § 1. Nations Direct has the original Note in its possession. Exhibit A. A person holding a Note that has been indorsed in blank may enforce the Note. Tex. Bus. & Com. Code § 1.201(21); 3.205(b); and 3.301. SLS remains the owner of the Note and Deed of Trust and is entitled to enforce their terms.

### 3. The Deed of Trust Permits Foreclosure and was Executed by Rachel Luna.

68.     The Deed of Trust allows Nations Direct to foreclose upon the Property upon default. Exhibit C, pp. 8-9, § 22. "For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale…" Exhibit C, p. 2, "TRANSFER OF RRIGHTS IN THE PROPERTY…" The Deed of Trust further states "If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law." Exhibit C, pp. 9-10, §22.

69.     Plaintiff signed the Deed of Trust and acknowledges doing so. Exhibit C, p. 10.

### 4. The Note is in Default and a Balance is Owed

---

[10] Petition, p. 3, § 10.

70.     As a result of Plaintiff's failure to make payments as they become due, on February 19, 2019, a Notice of Breach and Right to Cure Default letter was sent to Plaintiff informing her of her right to cure the default and of the intent to accelerate the maturity of the Note, if the default was not cured. Exhibit G. Plaintiff did not cure the default. Exhibit A. Because Plaintiff failed to timely cure her default, Hughes Watters Askanase, LLP, as counsel for Nations Direct, sent a Notice of Maturity/Acceleration letter to Plaintiff on February 8, 2022. Exhibit P.

71.     As of April 5, 2022, the total amount owed on the Note was $434,089.78 with interest continuing to accrue after April 5, 2022, at the per diem rate of $45.19. Exhibit A. In addition, reasonable and necessary fees and costs continue to accrue. Plaintiff defaulted on the Note by failing to make the May 1, 2018, payment and all subsequent payments. Exhibit A. The default persists.

72     For the foregoing reasons, Nations Direct is entitled to summary judgment for judicial foreclosure and an order of sale.

## VI.     REQUEST FOR ATTORNEY'S FEES AND COSTS

73.     Section 6 (E) of the Note provides that once the indebtedness is accelerated, the Lender may require the Borrower to pay costs and expenses, including attorneys' fees, expended in efforts to enforce the Note. Exhibit B, p. 2, §6(E).

74.     Section 9 of the Deed of Trust provides that if "there is a legal proceeding that may significantly affect Lender's rights in the Property and/or rights under this Security Instrument… then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument ." Exhibit C, p. 5, §9. The Deed of Trust further provides that "any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear

interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable." *Id.*

75.     Plaintiff seeks temporary and permanent injunctive relief in an effort to interfere with Nations Direct's rights under the security instrument.  This legal proceeding places before the Court issues that significantly affect Nations Direct's interest in the Property and rights under the Deed of Trust.  In such instances, the Deed of Trust permits the recovery of attorneys' fees and costs.

76.     The party seeking attorneys' fees is required to document the time spent and services performed.  *Hensley v. Eckerhart*, 103 S.Ct. 1933, 1941 (1983).  "Where counsel requests compensation at his normal billing rate and that rate is shown to be within the range of market rates for attorneys of similar skill and experience, the burden is on the opposing party to show that a lower rate should be used."  *United States v. Cornerstone Wealth Corp., Inc.*, No. 3-98-CV-0601-D, 2006 U.S. Dist. LEXIS 36077, 2006 WL 1524592 at *2 (N.D. Tex. June 2, 2006), citing *Islamic Center of Miss., Inc. v. City of Starkville*, 876 F.2d 465, 469 (5th Cir. 1989); see also *Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993) (court must articulate reasons for rejecting normal billing rate).

77.     In light of these provisions of the Deed of Trust and applicable law, there is an enforceable contract that permits the recovery of attorneys' fees.  Plaintiff's claims against Nations Direct are legally and factually groundless.  Nations Direct is entitled to reimbursement of its attorneys' fees and costs.  *Cardenas v. Wells Fargo Bank, N.A.*, Civil Action No. 4:11-cv-02916, Docket No. 18, Memorandum and Order, pages 11-15, Southern District of Texas (J. Hanks); *Fashakin v. Wells Fargo Bank, N.A.*, Civil Action No. 4:11-cv-00599, Docket No. 65, Order Granting Summary Judgment, pages 23-24, Southern District of Texas (J. Gilmore); *Perri v. Wells*

*Fargo Bank, N.A.*, Civil Action No. 4:11-cv-04018 [Docket No. 53]; (S.D. Tex. April 17, 2013, J. Milloy).

78.     As set forth in the Affidavit of Defendant's counsel attached hereto Defendant incurred attorneys' fees  in the amount of $8,091.00 in defending this litigation.  For the reasons set forth in the Affidavit, these attorneys' fees are both reasonable and necessary.  Defendant hereby request judgment against Plaintiff for its reasonable and necessary attorneys' fees and costs incurred in defending this lawsuit.

## VII.   **CONCLUSION AND RELIEF REQUESTED**

79.     Plaintiffs claims lack a basis in fact and in law.  The summary judgment evidence conclusively proves that Nations Direct consistently communicated with Plaintiff in an attempt to provide mortgage relief.   Its efforts were frustrated by liens perfected by other creditors.  Plaintiff will have no evidence that demonstrates that Nations Direct's efforts were undertaken with no intention of providing loss mitigation.  The conduct that forms the basis of Plaintiff's RESPA claim is not conduct related to the servicing of the loan and cannot support a RESPA claim.  The Court must enter summary judgment in Nations Direct's favor as to Plaintiff's fraud and RESPA claims. The summary judgment evidence also demonstrates that Nations Direct has the contractual right to foreclose its lien.  Nations Direct prays for a judgment declaring that right and providing for an order of sale should Nations Direct decide to foreclose judicially.  Finally, Nations Direct prays for an award of its reasonable and necessary attorney's fees as provided for by the Note, Deed of Trust, and Texas law

## VIII.   **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Nations Direct Mortgage, LLC prays that the Court  enter summary judgment in its favor on all claims, order that Plaintiff take nothing by way

of her claims, order that Nations Direct is authorized to foreclose its lien on the Property non-judicially, in the alternative, order that Nations Direct is entitled to judicial foreclosure, award Nations Direct its reasonable and necessary attorney fees and taxable costs of court, and award Nations Direct such further relief at law or in equity to which it may show itself entitled.

Respectfully submitted,

**HUGHES WATTERS ASKANASE, LLP**

By: _____
　　　Damian W. Abreo
　　　Texas Bar No. 24006728
　　　Total Plaza
　　　1201 Louisiana Street, 28th Floor
　　　Houston, Texas 77002
　　　(713) 759-0818 (Telephone)
　　　(713) 759-6834 (Facsimile)
　　　dabreo@hwa.com (E-mail)

**ATTORNEYS FOR DEENDANTS,
NATIONS DIRECT MORTGAGE, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Notice of Removal was forwarded to all parties and/or their attorneys of record, in accordance with the Federal Rules of Civil Procedure, on this the 17th day of November, 2022 addressed as follows:

***Via Email: brandyalexander@alexanderpllc.com***
Brandy M. Alexander
2502 La Branch St.
Houston, Texas 77004
**ATTORNEY FOR PLAINTIFF**

_____
Damian W. Abreo